IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
JACKSON DIVISION

| | | |
|---|---|---|
| TAMMY M. PRITCHARD, | ) | |
| | ) | |
| *On behalf of Herself and All Others* | ) | Case No. 1:20-CV-02356-STA-JAY |
| *Similarly Situated,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LOANCARE, LLC and AMERICAN | ) | |
| FINANCIAL RESOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
AMERICAN FINANCIAL RESOURCE'S
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

**<u>INTRODUCTION</u>**

Tammy Pritchard ("Pritchard"), in short, alleges that LoanCare ("LoanCare") charged her illegal fees to pay her mortgage loan. LoanCare is the subservicer hired to service Pritchard's loan by American Financial Resources, Inc. ("AFR"), the lender on Pritchard's mortgage loan. The crux of the matter here is that AFR has never charged Pritchard a payment processing fee, illegal or not, which is the only underlying alleged bad act that supports each and every claim in her First Amended Complaint ("FAC"). (ECF No. 12 at Page ID 73-90.)  As explained below, Pritchard fails to allege sufficient factual content to state a claim against AFR.

Pritchard, as is relevant against AFR, only alleges that AFR is liable for LoanCare's acts on a theory of agency and for a conspiracy with LoanCare in which LoanCare charged AFR's borrowers a payment processing fee in violation of some HUD or FHA regulation.  But Pritchard has not alleged that LoanCare acted within its actual or apparent authority as AFR's agent. And,

Pritchard has pleaded no facts to substantiate: (1) an unjust enrichment claim against AFR; (2) a conspiracy between AFR and LoanCare; or (3) any facts other than the contractual claims to support her tortious claims.  Therefore, all of Pritchard's claims fail.

## STATEMENT OF FACTS

### A.  Pritchard's Alleged Facts in Her Amended Complaint

AFR is a nationwide mortgage lender who contracts with subservicers to perform its servicing obligations for its mortgage loans. (FAC ¶ 2). On August 27, 2015, Pritchard bought real property in Adamsville, Tennessee, which is secured by a mortgage with AFR. (*Id*. at ¶¶ 16 & 33.) About a month after purchasing her home, LoanCare began servicing Pritchard's mortgage as a subservicer. (*Id*. at ¶¶ 2, 16, & 35.)  On five occasions, instead of mailing in her payment, Pritchard elected to have LoanCare process her payment through an optional pay-by-phone processing service or online processing service in exchange for a $10 fee. (*Id*. at ¶¶ 37-39; FAC Ex. A-E.) Pritchard asserts that this process violates her mortgage, HUD guidelines, or a FHA Servicing Handbook. (FAC at ¶ 40.)

Pritchard alleges that, because their employees and agents act under their direction and supervision, both LoanCare and AFR are vicariously liable under a theory of *respondeat superior*, or apparent or actual agency. (*Id*. at ¶ 3.) But, other than the existence of an agreement, Pritchard alleges no facts that establish that LoanCare is the agent of AFR, that she is an intended beneficiary of that agreement, or what the scope of LoanCare's authority is under that agreement. (FAC.)

Pritchard then makes states several conclusions of law and facts against LoanCare regarding what LoanCare charges mortgagors, how LoanCare is compensated under a subservicing contract, and what regulations govern servicing. Specifically relevant here, Pritchard alleges that HUD's Servicing Handbook proscribes "activities that are normally considered a part of a prudent

Mortgagee's servicing activity" and somehow extrapolates that to include, "like the Pay-to-Pay" fees being alleged as wrongful here. (FAC at ¶¶ 4-11.)  Noticeably absent in these paragraphs is any allegation against AFR, or that Pritchard somehow has a private right of action if the HUD Servicing Handbook was in fact violated.

Pritchard alleges, as a legal conclusion without any factual allegations to substantiate it,[1] that LoanCare was acting within the scope of an agency relationship with AFR and that AFR maintained the right to control and direct both the means and the details of the process by which LoanCare performed its services; thus, according to Pritchard, LoanCare is vicariously liable for the acts of AFR. (FAC at ¶ 25.) But Pritchard never alleges AFR has done anything for which LoanCare would be liable for. And, if Pritchard meant that AFR is vicariously liable for LoanCare's acts or omissions, she has pleaded no facts to establish what the actual or apparent scope of authority of LoanCare is and that it acted accordingly.

## B.  Facts Relied Upon From Outside Documents

Pritchard failed to attach to the FAC relevant portions of the subservicing agreement between LoanCare and AFR that she references (FAC at ¶ 72); relevant portions of the HUD Servicing Handbook that she references (*Id*. at ¶¶ 8 & 80); relevant portions of the FHA Servicing Guidelines that she references (*Id*. at ¶¶ 22 & 80); relevant portions of the CFPB guidance on allowable fees chargeable to borrowers that is referenced by the HUD and FNMA documents; or her executed Deed of Trust (her contract with AFR) (*Id*. at ¶¶ 16, 24, 26-27, and 40-44).  Because

---

[1] "[T]his court need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013); *see also Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) ("Nevertheless, we need not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action."). Thus, the Court need not accept such allegations as true.

all of the foregoing are integral to the FAC and inherently relied upon by her in forming her allegations, the Court can consider these documents here without converting this motion into one for summary judgment. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007); *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004); *Hibner v. Regions Bank*, 2018 WL 3552350, at *5-6 (W.D. Tenn. July 24, 2018) (considering mortgage documents without converting motion to dismiss to motion for summary judgment). AFR attaches the relevant portions of these documents through the Declaration of Justin Parisi (attached as Exhibit 1), as Exhibits A, B, C, D, and E, respectively.

Exhibit A – the Subservicing Agreement

Section 2.2(a) of the subservicing agreement between LoanCare and AFR (the "SSA") states, "in performing all of its obligations hereunder, [LoanCare] will comply with the Applicable Requirements existent as of the Effective Date and [LoanCare] will take all necessary steps to remain compliant with the Applicable Requirements as they are amended, added, supplemented and/or revised from time to time."[2] (Ex. A to J. Parisi Dec.) Applicable Requirements is defined in Definition 1.9 as,

> the policies, procedures, laws and other authorities [LoanCare] will follow when performing under this Agreement. Applicable Requirements are: (i) this Agreement, including all schedules and exhibits; (ii) the Loan Documents and data and information regarding each Loan provided from [AFR] to [LoanCare]; (iii) the Guides, and any other applicable agreements, rules, directives and instructions of the applicable Agency, housing authority or private investor relating to the servicing or subservicing of the Loans; (iv) the Investor Instructions; (v) all Applicable Laws; (vi) all other applicable requirements and guidelines of each governmental agency, board, commission, instrumentality and other governmental body or officer having jurisdiction, including, without limitation, those issued by FHA, VA and CFPB; (vii) all other applicable judicial and administrative

---

[2] The SSA also recognizes there could be conflicts and that not all Applicable Requirements carry the same degree of authority, *i.e.,* even if somehow, something could be construed in the SSA as AFR allowing LoanCare to charge an illegal fee, the fact of its illegality would trump such permission.  (*See* Section 2.2(b) of the SSA (Ex. A to J. Parisi Dec.).)

judgments, decrees and orders; and (viii) [LoanCare's] Implementation Manual, Servicing Guide and other written policies and procedures.

(*Id.*)

Exhibit B – the HUD Servicing Handbook

Section III(A)(1)(f), Servicing Fees and Charges, provides,

The Mortgagee may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as authorized by HUD below.  All fees must be:
- reasonable and customary for the local jurisdiction;
- based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; and
- within the maximum amount allowed by HUD.
    . . .
The Mortgagee must not charge the Borrower for the following services:
- costs of telephone calls, telegrams, personal visits with the Borrower, certified mail, or other activities that are normally considered a part of a prudent Mortgagee's servicing activity. . ."

(Ex. B to J. Parisi Dec.) At Section III(A)(1)(B), it further provides that, "the Mortgagee may request approval from the National Servicing Center (NSC) for any fee, charge, or unusual service not specifically mentioned." (*Id.*)

Section III(A)(1)(a)(ii)(A) provides that, "Mortgagees must comply with all laws, rules, and requirements applicable to mortgage servicing, including full compliance with the applicable requirements under the purview of the Consumer Financial Protection Bureau (CFPB)". (*Id.*)

Exhibit C – the FHA Servicing Guidelines

The FHA lending and servicing rules referenced by Pritchard at Paragraphs 22 and 80 and elsewhere in the FAC are contained in the FHA Single Family Housing Policy Handbook. The FHA Single Family Housing Policy Handbook states substantively the same exact words as does the HUD Servicing Handbook and also requires the mortgagee to comply with "all laws, rules, and requirements applicable to the servicing of FHA-insured mortgages, including full compliance

with the applicable requirements under the purview of the CFPB (the Consumer Finance Protection Bureau)." (See Section II(B)(2)(a)(i) (Ex C to J. Parisi Dec.).)

<u>Exhibit D – the CFPB Guidance Letter</u>

Given that the CFPB is an agency promulgating rules under the auspices of both HUD and FNMA, it is instructive to review any guidance issued by the CFPB.  To that end, AFR references CFPB Compliance Bulletin 2017-01, Subject: Phone Pay Fees.  This bulletin neither expressly allows nor forbids phone pay fees. (Ex. D to J. Parisi Dec.) It does acknowledge that in some jurisdictions, phone pay fees could be proscribed by law in certain situations, but it also acknowledges that collected with complete transparency, disclosure of the fee, offering of a no fee way to pay, an extra service associated with the fee such as same day application of the payment to the account that would otherwise be unavailable through the free method, and the voluntary acceptance of the fee by the borrower, the fees could in fact, be permissible. (*Id*.) The bulletin is designed to alert entities on how to avoid engaging in a deceptive act or practice in administering the fees, not to proscribe the fees altogether, thereby tacitly endorsing the fees if practiced correctly, and otherwise not proscribed by any other law or regulation. (*Id*.)

<u>Exhibit E - Pritchard's Deed of Trust</u>

Regarding Pritchard's Deed of Trust, under the Uniform Covenants, Pritchard alleges that lender may <u>only</u> assess fees authorized by the Secretary of HUD.  (FAC at ¶ 7.)  In fact, the Deed states in Uniform Covenants, ¶8, "Lender may collect fees and charges authorized by the Secretary", but not <u>only</u> such fees. (ECF 11-2 at Page ID 61; Ex E to J. Parisi Dec.)

## <u>**STANDARD OF REVIEW**</u>

AFR agrees with and adopts the Standard of Review set forth by co-Defendant LoanCare in its Motion to Dismiss (ECF No. 46-1 at Page ID 215.)

## LAW AND ARGUMENT

**A. All of Pritchard's Claims Against AFR Fail Because AFR As Principal is not Liable for the Acts of its Agent if the Agent Acted Outside the Actual or Apparent Scope of Authority (or, of course, if the Agent Did Nothing Wrong).**

In Tennessee, "a principal may be held vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority." *Abshure v. Methodist Healthcare-Memphis Hosps*., 325 S.W.3d 98, 105 (Tenn. 2010). The principal's liability is only purely derivative of the agent. *Id*.; *Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240, 251 (Tenn. 2010); *see also Ali v. Fisher*, 2003 WL 22046673, at *5 (Tenn. Ct. App. Aug. 29, 2003), *aff'd*, 145 S.W.3d 557 (Tenn. 2004) ("Vicarious liability is imputed legal responsibility for the acts of another."); *Miller v. Vanderbilt Univ.*, 2017 WL 4467445, at *6-7 (Tenn. Ct. App. Sep. 29, 2017). Moreover, "[o]ne of the fundamental principles of agency law is that a principal is neither bound by a contract made by a person who is not his agent, nor by a contract made by an agent who acted beyond the scope of the agent's authority, absent a valid ratification by the principal." *Savage v. City of Memphis*, 464 S.W.3d 326, 332 (Tenn. Ct. App. 2015); *see also Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 270 (Tenn. 2001) (same as *Savage*).

In *Savage*, the plaintiff (a former employee) sued to enforce a settlement agreement he purportedly reached with an assistant city attorney who was allegedly acting as the mayor's agent. *Savage*, 464 S.W.3d at 329-30. The parties filed cross summary judgment motions. *Id*. at 331. The trial court granted the plaintiff's motion, finding that the agent had apparent authority to enter into the settlement agreement. *Id*. at 331. The Court of Appeals reversed because that the evidence was insufficient to establish that the agent had authority (actual or apparent) to enter into an agreement. *Id*. at 333-37. Thus, the City was not bound by the alleged settlement.

Tennessee courts describe apparent authority as "(1) such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; (2) such authority as he appears to have by reason of the actual authority which he has; (3) such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *SecurAmerica Bus. Credit v. Schledwidtz,* 2014 WL 1266121, at *18 (Tenn. Ct. App. Mar. 28, 2014). The scope and extent of an agent's authority are questions of fact that must be determined from all of the facts and circumstances of the particular case. *Id.* at *16. "[T]he plaintiff must sufficiently allege that an agency relationship existed in order to survive a Rule 12(b)(6) motion to dismiss." *Barrett-O'Neill v. Lalo, LLC*, 2014 WL 3895679, at *3 (S.D. Ohio Aug. 8, 2014). "It is insufficient to merely plead the legal conclusions of agency." *Reed v. Gulf Coast Enterprises*, 2016 WL 79998, at *11 (W.D. Ky. Jan. 6, 2016). Rather, Pritchard "must plead sufficient facts to establish an agency relationship." *Id.*

Here, Pritchard has pleaded no facts to establish what the actual or apparent authority of LoanCare is under the SSA or otherwise. (FAC.) Pritchard has made absolutely no allegation directly against AFR that AFR has done anything wrong. (*Id.*) Instead, Pritchard has only alleged that LoanCare is the agent of AFR, and that LoanCare has charged allegedly impermissible fees. (*Id.* at ¶¶ 25 and 37-43.) As to agency, Pritchard alleges in the FAC that "LoanCare acted within the scope of its agency relationship with AFR with respect to the conduct alleged" and that "AFR maintained the right to control and direct the means and the details of the process by which LoanCare performed such actions". (*Id.* at ¶ 25.) These are merely conclusory legal allegations supported by no facts and are thus insufficient. *See e.g., Daniel v. Midland Funding, LLC*, 2016 WL 4253886, at *5 (E.D. Mich. Aug. 12, 2016) ("However, assuming that Plaintiff means that Asset filed the lawsuit without the actual authority to collect on the debt, this is a legal conclusion

not borne out by any factual allegations in her complaint."); *Barrett-O'Neill*, 2014 WL 3895679, at *4 (rejecting agency allegations as "legal conclusions" which "are insufficient under Rule 12(b)(6) to establish an agency relationship"); *see also Reed*, 2016 WL 79998, at *12. The Court need not accept Pritchard's conclusory allegations and legal conclusions masquerading as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Youth Alive, Inc.*, 732 F02d at 649; *Bickerstaff*, 830 F.3d at 396. Thus, because Pritchard has not alleged any facts supporting that LoanCare acted within its actual scope of authority granted to it by AFR nor within any apparent authority, Pritchard fails to state a claim. *See e.g., McWilliams v. S.E., Inc.*, 581 F. Supp.2d 885, 893 (N.D. Ohio 2008) ("Furthermore, McWilliams mere legal conclusion that '[a]ll acts of New part Defendant SPOT, LLC were done by its agents[,]' is insufficient to establish agency. McWilliams, therefore, may not impute Milford's alleged negligence to SPOT. Accordingly, SPOT's motion to dismiss is GRANTED.").

Furthermore, the SSA contradicts any authority for LoanCare to charge illegal fees. In fact, the SSA establishes that AFR does not control the means and details of the process by which LoanCare performs its services. The SSA expressly proscribes any process that violates Applicable Requirements, *i.e.,* if the pay-to-pay fees are in fact illegal as Pritchard alleges, then LoanCare acted outside its actual scope of authority. Additionally, if the pay-to-pay fees are illegal as suggested by Pritchard, it would be unreasonable to assume that LoanCare acted within its actual or apparent authority to collect them.  If the pay-to-pay fees are not illegal (as is suggested by the CFPB guidance on the matter if done within certain guidelines), then neither LoanCare nor AFR can be held to have done anything wrong.  In either case, there is no claim against AFR.

Pritchard has made no allegation that AFR has knowingly permitted LoanCare any additional authority, or that LoanCare's apparent authority is more than it is based on its actual

authority, or that Pritchard as a reasonably prudent individual, having used diligence and discretion, naturally supposed LoanCare to possess an authority beyond that of the SSA.  As such, since all liability to AFR in this action relies on a theory of vicarious liability, all claims must fail. *See e.g., Reed*, 2016 WL 79998, at *11-12 ("Because Reed has failed to plead sufficient facts to demonstrate the existence of an agency relationship between SourceAmerica and the other Defendants, Reed has failed to allege a plausible basis to hold SourceAmerica liable for the other Defendants' alleged conspiracy to discriminate based on disability."); *see also Cunningham v. Kodaur Capital*, 2014 WL 8335868, at *7-8 (M.D. Tenn. Nov. 19, 2014) (dismissing vicarious liability claim because the plaintiff failed to allege sufficient facts to support entitlement to relief), report and recommendation adopted, 2015 WL 1412737, at *1 (M.D. Tenn. Mar. 26, 2015).

### B.  Pritchard's Breach of Contract Claim Fails Because She has Failed to Identify any Actual Term of the Contract that AFR has Breached.

To state a breach of contract claim, Pritchard must allege: (1) the existence of an enforceable contract, (2) the actual term(s) that AFR has actually breached, and (3) her damages resulting therefrom. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). "In the context of a motion to dismiss, a breach of contract claim must contain either a direct or inferential allegation respecting all the material elements necessary to sustain recovery." *McKnelly v. Wyndham Destinations, Inc.,* 2020WL 1518624, at *3 (E.D. Tenn. Mar. 30, 2020). "It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *KSA Enters. v. Branch Banking & Tr. Co.,* 761 Fed. App'x 456, 460 (6th Cir. 2019).

Here, Pritchard identifies two contracts, the mortgage contract that she entered into with AFR and the SSA that is between only AFR and LoanCare. AFR agrees with Pritchard's allegation

that Tennessee law applies to claims arising out of the mortgage contract. (FAC at ¶ 44.) The SSA and claims arising from it, however, are governed by Virginia law based on the choice of law provision contained therein.[3]  (Dec of Parisi, Ex A). Pritchard fails to state a claim for a breach of the mortgage contract.

    First, as alluded to in Section A, AFR is only vicariously liable under the mortgage contract if LoanCare, as AFR's agent, acted beyond its actual or apparent scope of authority if what it did in so acting was wrong.  And AFR is not liable because if what LoanCare charged Pritchard was illegal, then LoanCare was acting beyond its actual or apparent scope of authority.

---

[3] These choice of law provisions control. In Tennessee, "parties ordinarily are free to contract that the law of some jurisdiction other than that of the place of making will govern their relationship." *English Mountain Spring Water Co., Inc. v. AIDCO Int'l, Inc*., 2008 WL 2278627, at *2 (E.D. Tenn. May 30, 2008). If the parties so contract, "that intent will be honored provided certain requirements are met." *Id.* "For the intent [of the contracting parties] to be honored, the choice-of-law provision must be executed in good faith, the chosen jurisdiction must bear a material relationship to the transaction, the basis of the choice must be reasonable, and finally, the parties' choice must not subvert the policy of a state having a materially greater interest and whose law would otherwise govern. *Id*. Additionally, choice of law provisions in multi-state contracts are "valid absent contravention of public policy of the forum state or a showing that the selected forum does not bear a reasonable relationship to the transaction. *Carroll v. CMH Homes, Inc*., 2013 WL 2431432, at *4 (E.D. Tenn. June 4, 2013). The requirements are met here. The choice of law provision was executed in good faith and selected Virginia, LoanCare's principal place of business, based on its material relationship to the SSA with AFR. (FAC at ¶¶ 17-18.) Enforcing the provision will not subvert Tennessee law even if a different outcome is compelled. *Credit Payment Servs., Inc. v. Moneygram Payment Sys., Inc*., 2015 WL 12531989, at *3 (E.D. Tenn. Feb. 13, 2015). Thus, Virginia law should govern claims arising out of the SSA.
Virginia law also governs tort claims arising out of the subservicing contract. "When determining whether a tort claim is covered under a contractual choice of law clause or whether it is separate  . . . the question is whether the alleged torts 'related to and arise from the Agreement, and concern the defendant's action pursuant to the Agreement,' which would be subject to the contractual choice of law clause," or whether they relate to distinct event. *EPAC Techs., Inc. v. Thomas Nelson, Inc*., 438 F. Supp. 3d 847, 852–53 (M.D. Tenn. 2018); *Hasler Aviation, L.L.C. v. Aircenter, Inc*., 2007 WL 2463283, at *5 (E.D. Tenn. Aug. 27, 2007)(finding contractual choice of law provision applied to both contract and tort claims based on defendant's alleged failure to fulfill a purchase order.)

Second, Pritchard alleges that the Pay-to-Pay fees she paid violate the mortgage contract because they are proscribed by the HUD Servicing Handbook. (FAC at ¶¶ 7-8.) Pritchard does not have a private right of action under the HUD Servicing Handbook. *See Wells Nat'l Mortg. Ass'n v. Favino*, 2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011) ("There is no private right of action for breach of HUD regulations or FHA policy."); *Meyer v. Citimortgage*, 2012 WL 511995, at *3 (E.D. Mich. Feb. 16, 2012) ("It is well established that the National Housing Act and attending regulations do not expressly or implicitly create a private right of action to mortgagors for a mortgagee's noncompliance with the Act or regulations."); *see also Federal Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989). Thus, the HUD Servicing Handbook does not provide a basis for a breach of contract claim. To provide such a right, the contract must incorporate the HUD regulations. *Sinclair v. Donovan*, 2011 WL 5326093, at *7 (S.D. Ohio Nov. 4, 2011). The mortgage contract here states, in pertinent part, "Fees. Lender may collect fees and charges authorized by the Secretary." (ECF 11-2 at Page ID 61.) Because this language is permissive rather than restrictive (*i.e.*, does not expressly forbid additional fees that may be charged to Pritchard), the HUD Servicing Handbook is not incorporated into Pritchard's contract; therefore, Pritchard's breach of contract claim fails. *See Caldwell v. Freedom Mortgage Corp.*, 2020 WL 4747497, at *2 (N.D. Tx. Aug. 14, 2020) (dismissing breach of contract claim based on HUD regulations/handbook because mortgage provision stating that the lender "may collect fees and charges authorized by the Secretary" failed to expressly incorporate the HUD regulations/handbook into the mortgage).

Third, AFR is not liable because it appears from a review of the HUD, FNMA, and CFPB guidance, pay-to-pay fees are not inherently illegal, nor proscribed by the Deed of Trust. Pritchard is relying on a misapplied concept that the HUD Servicing Handbook proscribes these fees and

that the Deed of Trust words that she **may** be charged fees authorized by the Secretary transforms

into that she may **only** be charged such fees.  The actual words of the documents, which the Court

can consider, contradict Pritchard's allegations that these fees are illegal, and these documents,

therefore, trump her allegations. *Wigley v. Am. Equity Mortg.*, 2015 WL 7292562, at *4 (W.D.

Tenn. Nov. 7, 2015) (Anderson, J.); *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36.

Pritchard alleges that the HUD Servicing Handbook actually prohibits these fees. (FAC at

¶¶ 7-8.) While the HUD Servicing Handbook does not expressly authorize such fees, it also does

not expressly proscribe such fees and, thus, does not prohibit them as alleged. It only says that

mortgagees must not charge for the "costs of telephone calls, telegrams, personal visits with the

Borrower, certified mail, or other activities that are normally considered a part of a prudent

Mortgagee's servicing activity." (HUD Servicing Handbook at § III(A)(1)(f) (Ex. B to J. Parisi

Dec.).)  It does not proscribe charging for extra services rendered, such as charging a convenience

fee for the extra service of accepting a payment with expedited crediting over the phone. (*Id.*) It is

not the phone call being charged for, it is the expedited crediting service and processing of the

payment immediately.  Moreover, the CFPB contemplates such charges so long as the borrower is

made aware of the charge and there is a no fee alternative, as here (i.e., mailing her payment).[4]

Therefore, Pritchard fails to state a breach of contract claim.[5]

---

[4] Pritchard also mischaracterizes the HUD Servicing Handbook and the Deed of Trust Uniform Covenants as allowing a charge only for the actual out-of-pocket expense associated with the service.  (FAC at ¶ 31). This is again simply belied by the actual words of the handbook and the Deed of Trust.  The HUD Servicing Handbook only says the charge must be **based** on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage, and must be reasonable and customary. (Dec. of Parisi, Ex. B and E). There is no allegation in the FAC that the fee is not reasonable or customary or not based upon the actual costs, only that it is more than the actual costs, which is not proscribed.

[5] Pritchard has not alleged or identified any provision of the SSA as a basis for a breach of contract claim. (FAC.) This is fatal. *See Shirley v. Nation Star Mortg., LLC*, 2011 WL 1196787, at *2 (E.D.

### C. Pritchard's Breach of Implied Duty of Good Faith and Fair Dealing Fails Because There are no Additional Rights Other than Exist in the Contract.

"It is well-established that '[i]n Tennessee, the common law imposes a duty of good faith in the performance of contracts." *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013). Thus, the mortgage here would have such a duty. However, in *Lamar Advert. Co. v. By-Pass Partners*, the court explained this doctrine:

> The purpose of this implied covenant is (1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered. 'The implied obligation of good faith and fair dealing does not, however, create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement.' The determination of what is required by the duty of good faith in a given case turns on an interpretation of the contract at issue. 'In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable.' Whether a party acted in good faith is a question of fact.

*Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009). This implied duty is not a separate and distinct cause of action from the breach of contract claim. *Asemota v. Suntrust Mortg., Inc.*, 2012 WL 12550260, at *8 (W.D. Tenn. June 18, 2012); *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 572 (6th Cir. 2003).

Here, Pritchard bases this claim on the very same conduct that she bases her breach of contract claim. (FAC at ¶ 88.) Because, as explained in Section B, Pritchard fails to state a breach

---

Tenn. Mar. 29, 2011) (dismissing breach of contract claim because plaintiff failed to state a claim since the contract was not attached, the plaintiff did not identify or quote any specific contract provisions, and only offered conclusory assertions); *Northampton Restaurant Group, Inc., v. FirstMerit Bank, N.A.*, 492 Fed. App'x 518, 522 (6th Cir. 2012) ("The restaurant was required to allege facts sufficient to make its breach-of-contract claim plausible on its face, and without the contracts or reference to specific language, Northampton has failed to put forth a plausible claim for relief."). To the extent she alleges a claim based on the SSA, AFR adopts and incorporates LoanCare's argument that Pritchard is not a third party beneficiary of the SSA. (ECF No. 46-1 at Page ID 220-222.)

of contract claim, there is no breach of the implied duty of good faith and fair dealing. Therefore, Pritchard's claim fails. *Asemota*, 2012 WL 12550260, at *8.

### D. Pritchard's Claim of Unjust Enrichment Fails Because She has not Alleged Anything as Against AFR.

Because the theory of unjust enrichment is only an alternative to a breach of contract claim, a plaintiff "cannot recover under an unjust enrichment theory if a valid contract existed, since a contract may not be implied where a valid contract exists on the same subject matter." *Thompson v. American Gen. Life and Acc. Ins. Co.*, 404 F. Supp.2d 1023, 1029 (M.D. Tenn. 2005). Thus, because there is a written mortgage agreement, Pritchard's unjust enrichment claim fails. *Stiers v. State Farm Ins.*, 2012 WL 2405982, at *7 (E.D. Tenn. June 25, 2012) (dismissing unjust enrichment claim for failure to state a claim since an enforceable contract existed).

Further, to sustain a claim of unjust enrichment, Pritchard must allege facts to substantiate that: (1) she conferred a benefit upon AFR; (2) AFR appreciated the benefit, and (3) acceptance of the benefit under such circumstances that it would be inequitable for AFR to retain the benefit without payment of the value thereof. *Abriq v. Hall,* 295 F.Supp.3d 874, 882 (M.D. Tenn. 2018). Here, Pritchard fails to make any allegations against AFR. (FAC at ¶¶ 91-94.) Rather, Pritchard directed her allegations only at LoanCare. (*Id.*) Therefore, Pritchard fails to state a claim against AFR. *See e.g., Wingo v. Tenn. Dept. of Corrections*, 499 Fed. App'x 453, 455 (6th Cir. 2012) ("Wingo's complaint fails to state a plausible claim for relief against Mills, Ray, and TRICOR because Wingo did not allege any specific acts by these defendants.").

### E. Pritchard's Claim of Civil Conspiracy Fails Because She Cannot Establish that AFR Acted With LoanCare in a Common Design or Plan.

Firstly, Virginia law should apply to the conspiracy analysis because the SSA is the only agreement between AFR and LoanCare that Pritchard identifies, and Virginia law is the choice of law.  To the extent Tennessee law applies, the result is the same.

Under Virginia law, a civil conspiracy requires "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Sanford v. Virginia*, 2009 WL 2753179, *5 (E.D. Va. Aug. 26, 2009). "Virginia law also requires that damage was caused to the plaintiff by an act committed in pursuance of that conspiracy: 'where there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong.'" *Id.* at *5. "Therefore, in order for the Plaintiff's civil conspiracy claim to survive, [s]he must adequately plead not only the elements of civil conspiracy, but also the elements of the underlying tort committed by the conspirators that damages him." *Id. See also Almy v. Grisham*, 273 Va. 68, 80 (2007).

In Tennessee, a civil conspiracy "is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damages to the plaintiff." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010). The elements of such a claim are "(1) a common design between two or more person, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Pritchard's claim fails under either Virginia or Tennessee law.

Here, Pritchard alleges that AFR committed acts in furtherance of the conspiracy by agreeing to allow LoanCare to charge unlawful fees. (FAC at ¶ 99.)  But the only agreement

between AFR and LoanCare contradicts this allegation and, therefore, "trumps the allegations" of the FAC. *Wigley*, 2015 WL 7292562, at *4. The SSA specifically forbids LoanCare from performing its servicing obligations in violation of Applicable Requirements. (SSA at § 2.2(a) (Ex. A to J. Parisi Dec.).) Thus, Pritchard fails to state a claim for conspiracy. *See e.g., O'Dell v. O'Dell*, 303 S.W.3d 694, 698 (Tenn. Ct. App. 2008) (dismissing conspiracy claim because plaintiff failed to allege unlawful purpose or means).

Furthermore, a conspiracy claim "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Lane*, 334 S.W.3d at 763.  If the underlying tort fails, the civil conspiracy claim fails as well. *Id*. at 764 ("Because the claims underlying the allegations for civil conspiracy fail, the conspiracy claim must also fail."); *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004) ("Therefore, if the claim underlying the allegation of civil conspiracy fails, the conspiracy claim must also fail."). Virginia also requires an underlying tort. *Almy*, 273 Va. at 80. Thus, because, as explained below, Pritchard's claims for negligence and negligent misrepresentation fail, her civil conspiracy claim also fails. *Id*.; *Lane*, 334 S.W.3d at 763.

Finally, the law expressly disavows a conspiracy to breach a contract claim. This is because the conspiracy must relate to "a breach of a common law duty, as opposed to one that exists between the parties by virtue of a contract alone." *1004 Palace Plaza, LLC v. Ebadom Food, LLC*, No. 1:18-CV-1376, 2019 WL 3084236, at *2 (E.D. Va. July 15, 2019). As such, a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim [for statutory business conspiracy]." *Id.* at *3.  This concept furthers Virginia's stance against converting breach of contract claims into fraud claims.  *Id.*; *G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 168 F.Supp.3d 147, 167 (D.D.C. 2016)

("A breach of contract cannot serve as the basis for a civil claim for statutory conspiracy under Virginia Code § 18.2-500.)

Tennessee law, if it applied, is in accord. *Daily v. Gusto Records, Inc.*, 14 Fed. Appx. 579, 588 (6th Cir. 2001) (while Tennessee has not "specifically rejected a cause of action for conspiracy to breach a contract, it does not recognize a cause of action for negligent or tortious breach of contract apart from a breach of contract claim."). Here, Pritchard's conspiracy allegations are all premised on a supposed agreement by LoanCare and AFR to breach Pritchard's mortgage contract. (FAC at ¶ 96.) Therefore, Pritchard fails to state a claim.[6]

### F. Pritchard's Claim of Negligence Fails Because the Alleged Claims Sound Purely in Contract.

Pritchard premises her negligence claim on a breach of her mortgage contract. (FAC ¶¶ 102-111.)  Given that these allegations are limited to a breach of her mortgage contract, rather than the SSA, Tennessee law applies.  In Tennessee, the elements of a negligence claim are: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).  However, under Tennessee law,[7] Pritchard cannot recast her breach of contract claim as a negligence claim. *See Harvest v. Ernst & Whinney*, 610 S.W.2d 727, 728 (Tenn. Ct. App. 1980)

---

[6] "To prevail on a claim for civil conspiracy based on inducement to breach a contract, the plaintiff must establish a claim for inducement to breach a contract." *JIT Concepts, Inc. v. Shelby Cty. Healthcare Corp.*, 358 F. Supp. 2d 678, 688 (W.D. Tenn. 2005). Pritchard has not alleged an inducement to breach a contract claim. (FAC.)

[7] To the extent Virginia law applies, it is in accord. *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (Virginia rejects "tort action[s] based solely on the negligent breach of a contractual duty with no corresponding common law duty."); *see also Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (Va. 2019).

("Insofar as a breach of contract action is concerned, it matters not a whit whether the breach was an intentional one or an unintentional one caused by negligence in attempting to perform. The action still remains in contract."); *see also Oak Ridge Precision Industries, Inc. v. First Tenn. Bank Nat'l  Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992).

Here, Pritchard's negligence claim is premised on a breach of an alleged contractual duty. (FAC at ¶¶ 104-106.)  Therefore, the Court should dismiss Pritchard's negligence claim.  *See Goodman v. Park Place Securities, Inc.*, 2013 WL 8508580, at *3-4 (E.D. Tenn. Feb. 26, 2013) (dismissing negligence claim because "the claims, in substance, assert[ed] that ASC was negligent in performing its contracts . . . and in following and administering the terms . . . [and thus] remain[ed] in contract").

### G. Pritchard's Claim of Negligent Misrepresentation Fails Because AFR has Made No Misrepresentation Whatsoever.

Like her negligence claim, Pritchard's negligent misrepresentation is also premised on purported violations of the mortgage contract; thus, Tennessee law applies. (FAC at ¶¶ 112-120.) Tennessee adopts the Restatement (Second) of Torts § 552 for negligent misrepresentation, which strictly limits the tort to "commercial" or "business" transactions. *Hodge v. Craig*, 382 S.W.3d 325, 344–45 (Tenn.2012); Restatement (Second) of Torts § 552(1) & cmt. a. To state a negligent misrepresentation claim, Pritchard must allege that:

> (1) the defendant is acting in course of his business, profession, or employment, or in transaction in which he has pecuniary (as opposed to gratuitous) interest; and (2) the defendant supplies faulty information meant to guide others in their business transactions; and (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information.

*Thompson v. Bank of America,* 773 F.3d 741, 752 (6th Cir.2014) (citations omitted.)  Pritchard's negligent misrepresentation claim fails for several independent reasons.

First, like her negligence claim, Pritchard bases her claim on the failure of a contractual duty and not a common law duty.  (FAC at ¶¶ 112-120.) Therefore, as with her negligence claim, since this claim is contractual in nature, the Court should dismiss Pritchard's negligent misrepresentation claim.

Second, Pritchard fails to satisfy the heightened pleading requirements for negligent misrepresentation. *See LeBlanc v. Bank of Am., N.A.,* No. 2:13-CV-02001-JPM, 2013 WL 3146829, at *16 (W.D. Tenn. June 18, 2013) ("Under Tennessee law, claims for negligent misrepresentation fall within the higher pleading requirements of Rule 9(b).").  This rule requires misrepresentation allegations to be plead with specificity and precludes Pritchard from relying on "blanket references to acts or omissions by all of the 'defendants.'" *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 438 F. Supp. 2d 869 (E.D. Tenn. 2006), aff'd in part, rev'd in part and remanded, 484 F.3d 865 (6th Cir. 2007). It requires Pritchard to: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012).

Here, Pritchard makes generic references to unspecified misrepresentations by "Defendants" without identifying any speaker or when or how the misrepresentations were made. In fact, Pritchard fails to allege that AFR supplied any faulty information.[8] Thus, Pritchard fails to state a claim against AFR. *See e.g., Kattawar v. Logistics and Distribution Servs., Inc.*, 2015 WL

---

[8] Pritchard refers to "Defendants" collectively for this claim. (FAC at ¶¶ 113-119.) Her other allegations demonstrate that AFR did not make any such representations. In particular, Pritchard admits that a month after closing on her home LoanCare began servicing her loan. (*Id.* at ¶¶ 16 and 35.) And LoanCare was the only servicer of Pritchard's loan. (*Id.* at ¶ 36.) Consequently, AFR and its representatives did not service the loan and, thus, did not make any representations to Pritchard about paying the loan.

508011, at *9 (W.D. Tenn. Feb. 6, 2015) (dismissing negligent misrepresentation claim because plaintiff failed to comply with Rule 9(b) pleading standard).

Lastly, the misrepresentations she contends LoanCare made occurred in the context of her admittedly <u>non-commercial</u> mortgage payment transaction.  (FAC at ¶¶ 34 & 115.)  As such, the claim fails because "Tennessee cases involving negligent misrepresent all involve commercial transactions." *Shelby v. Delta Air Lines, Inc.*, 842 F.Supp. 999, 1015 (M.D. Tenn. 1993). Therefore, Pritchard fails to state a claim.

## <u>CONCLUSION</u>

For the foregoing reasons, AFR respectfully requests the Court dismiss each of Pritchard's claims as against AFR.

Respectfully submitted this 30th day of September, 2020.

    s/ Matthew R. Courtner
Matthew Courtner, Esq.
Rainey Kizer Reviere & Bell PLC
Jackson Office
209 E. Main Street
Jackson, TN 38301
731-423-2414

Jack B. Baldini, Esq. (*pro hac vice*)
Baldini Law, LLC
12557 leatherleaf Drive
Tampa, Florida 33626
973-945-1645

**Counsel for American Financial Resources, Inc.**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document through the Court's electronic CM/ECF system, which will send a notice of electronic filing to the following Filing Users registered to receive filings in this case:

Caroline R. Taylor
WHITFIELD BRYSON LLP
518 Monroe Street
Nashville, TN 37208
caroline@whitfieldbryson.com

Erica L. Calderas, *Pro Hac Vice*
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, OH 44114
elc@hahnlaw.com

Scott C. Harris
Jeremy R. Williams
WHITFIELD BRYSON LLP
P.O. Box 12638
Raleigh, NC 27605
scott@whitfieldbryson.com
jeremy@whitfieldbryson.com

Michael J. Gleason *Pro Hac Vice*
HAHN LOESER & PARKS LLP
One American Plaza
600 W Broadway, Suite 1500
San Diego, CA 92101
mgleason@hahnlaw.com

Edward H. Maginnis
Karl S. Gwaltney
Asa C. Edwards
MAGINNIS LAW, PLLC
4801 Glenwood Avenue, Suite 310
Raleigh, NC 27612
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com
aedwards@maginnislaw.com

W. Reese Willis III
Elizabeth Padgett
FIDELITY NATIONAL LAW GROUP
4170 Ashford Dunwoody Road, Suite 475
Atlanta, GA 30319
reese.willis@fnf.com
elizabeth.padgett@fnf.com

DATED this 30th day of September, 2020.

  s/ Matthew R. Courtner
Matthew Courtner, Esq.
Rainey Kizer Reviere & Bell PLC
Jackson Office
209 E. Main Street
Jackson, TN 38301
731-423-2414

Jack B. Baldini, Esq. (*pro hac vice*)
Baldini Law, LLC
12557 Leatherleaf Drive
Tampa, Florida 33626
973-945-1645
**Counsel for American Financial Resources, Inc.**